IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY ABBOTT, ERIC FANKHAUSER, LLOYD DEMARTINI, TOM JOHNSON, JACK JORDAN, MARK LANG, EDWARD ROSA and DENNIS TOMBAUGH, individually and on behalf of all those similarly situated, )<br><br>Plaintiffs,<br><br>vs.<br><br>LOCKHEED MARTIN CORPORATION and LOCKHEED MARTIN INVESTMENT MANAGEMENT COMPANY,<br><br>Defendants. | Case No. 06-cv-0701-MJR |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**I. Introduction**

On September 11, 2006, Plaintiffs filed a putative class action suit in this Court against Lockheed Martin Corporation and Lockheed Martin Investment Management Company, under the Employee Retirement Income Security Act of 1974 or "ERISA," **29 U.S.C. § 1001,** *et seq*. Plaintiffs allege breach of fiduciary duty under ERISA **§** 502(a)(2) and (3). At issue are two employee benefit plans: the Lockheed Martin Corporation Salaried Savings Plan ("SSP") and the Lockheed Martin Corporation Hourly Savings Plan ("HSP")[1]. Plaintiffs allege that the "fees and

---

[1] Plaintiffs Anthony Abbott and Eric Fankhauser reside in the Southern District of Illinois. Plaintiffs Lloyd DeMartini, Tom Johnson, Mark Lang, Edward Rosa and Dennis Tombaugh reside in California; Plaintiff Jack Jordan resides in Nevada. Plaintiff Abbott is a participant in the HSP Plan and seeks to represent the HSP Class. Fankhauser, DeMartini, Johnson, Lang, Rosa,

1

expenses paid by the Plans and thus borne by the participants, were and are unreasonable and excessive; not incurred solely for the benefit of the Plans and their participants; and undisclosed to participants." Complaint ¶ 12. Plaintiffs request that the Court find that Defendants have breached their fiduciary duties and order Defendants to make good to the Plans all losses incurred as a result of the conduct described in the complaint.

On October 23, 2006, Defendants filed motion to transfer venue pursuant to 28 U.S.C. §1404(a) (Doc. 18). A hearing was held on this matter on March 2, 2007, and the Court took the matter under advisement. Accordingly, the motion being fully briefed and the parties having been heard, the Court will now rule.

## II. Discussion

The ERISA venue provision allows plaintiffs to lay venue "where the plan is administered, where the breach took place, or where a defendant resides or may be found. . . ." **29 U.S.C. § 1132(e)(2)**. The parties do not dispute, and the Court concurs, that venue is proper here, because the Plan "may be found" in the Southern District of Illinois. *Waeltz v. Delta Pilots Retirement Plan,* **301 F.3d 804, 810 (7th Cir. 2002) ("A fund can be found in a judicial district if it has the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of** *International Shoe Co. v. Washington***, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)")**. The Plan calculates all benefits, communicates with all Plan participants and authorizes payment of all benefits in the District of Maryland. Thus, venue is also proper in the proposed transferee District.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the

---

Tombaugh and Jordan are participants in the SSP and seek to represent the SSP class.

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute gives district courts discretion to transfer cases according to "an individualized, case-by-case consideration of convenience and fairness." ***Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)**. To secure a § 1404(a) transfer, the movant must demonstrate: (a) that venue is proper in the transferor district; (b) that venue and jurisdiction are proper in the transferee district; and (c) that transfer will serve the convenience of the parties and witnesses and promote the interest of justice. ***See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *Forcillo v. LeMond Fitness, Inc.*, 220 F.R.D. 550, 552 (S.D.Ill. 2004) (J. Reagan)**. The first two elements are satisfied; accordingly, Defendants must demonstrate that transfer to the District of Maryland will serve the convenience of the parties and witnesses and will promote the interests of justice.

Defendants contend that the District of Maryland is a venue more convenient than the Southern District of Illinois because all of the Plans' documents and all witnesses associated with the Plans are located there, and all material events giving rise to Plaintiffs' complaint occurred there. Defendants assert that the case was brought in the Southern District of Illinois for the convenience of Plaintiffs' counsel, which is of no consequence in determining venue. At the hearing, Defendants argued that the three facilities[2] in the Southern District of Illinois have nothing to do with administering and managing the Plans.

Plaintiffs submit that deference must be accorded to their choice of forum especially in an ERISA case, albeit such deference is weakened in a class action. Plaintiffs do not concede that

---

[2]Defendants' papers alleged Lockheed Martin Corporation had one facility in St. Clair County, Illinois, the same county in which the main federal courthouse for the Southern District of Illinois is located. That was corrected by defense counsel at oral argument to reflect there are actually three Lockheed Martin Corporation facilities in St. Clair County, Illinois.

all important decisions are made in Maryland. Rather, according to Plaintiffs, Defendants have contracted out the service aspects of the Plans, including record-keeping and investment management. Plaintiffs assert that Defendants find it convenient to have employees in every state but only want to defend actions in their hometown. Plaintiffs argue that all of the things alleged in the Complaint, including failure to disclose and losses to Plan participants, have occurred, at least in part, in the Southern District of Illinois.

### A. Plaintiffs' choice of forum

This Court considers the weight due plaintiffs' choice of forum on a case-by-case basis, and the moving party bears the burden of showing that the transferee forum is more convenient. *See Chemical Waste Management, Inc. v. Sims*, **870 F.Supp. 870, 876 (N.D.Ill. 1994)**. Plaintiffs' choice of forum in ERISA actions is generally accorded substantial deference. ***Finley v. Dun & Bradstreet Corp.*, 2006 WL 861920, \*2 (N.D.Ill. 2006) (unpublished)**. However, that deference may be diminished where, as here, Plaintiffs are representatives of a class. ***Winnett v. Caterpillar Inc*., 2006 WL 1722434, \*3 (D.Tenn. 2006) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (". . . where there are hundreds of potential plaintiffs, . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.")**. The parties have not identified, nor has the Court found, a Seventh Circuit decision that squarely addresses the trade-off between the heightened degree of deference given to a plaintiff's chosen forum in an ERISA case and the diminished degree of deference accorded a plaintiff's choice in a class action.

If the class is certified, the named Plaintiffs will bear more responsibility than other members of the class. Plaintiffs Abbott and Frankhauser live in the Southern District of Illinois, and

the other named plaintiffs live in the West, which is physically more convenient to the Southern District of Illinois than to the District of Maryland. The Court considers, too, that a logical extension of Defendants' argument is that ERISA class actions could be brought only where the Plans are administered, even though they may be found in the district where the action was originally filed. In the opinion of the Court, this was not contemplated by Congress when it provided for expanded venue in ERISA actions. ***See Trustees of Hotel Employees and Restaurant Employees Intern. Union Welfare Pension Fund v. Amivest Corp*.  733 F.Supp. 1180, 1182 (N.D.Ill. 1990) (citations omitted) ("The ERISA venue provision is to be liberally interpreted; Congress intended to expand, rather than restrict, the ERISA plaintiff's choice of forum.")**. Accordingly, the Court finds that Plaintiffs' choice of forum remains entitled to some deference and that this factor weighs against transfer.

### B.     Convenience of the witnesses

The convenience of the witnesses is "the most important factor in the transfer balance." ***Forcillo*, 220 F.R.D. at 553 (citing *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F.Supp.2d 821, 834 (N.D.Ill. 1999))**. "In analyzing this factor, courts must look to the nature and quality of the witnesses' testimony with respect to the issues, not just the number of witnesses in each venue." ***Id*. (citing *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D.Ill.1995))**. "The Court must also consider whether these witnesses will be subject to compulsory process and the cost to obtain attendance of willing witnesses." ***Id*. (citing *Hanley v. Omarc*, 6 F.Supp.2d 770, 774 (N.D.Ill. 1998))**. In weighing the relative convenience of witnesses, the Court generally assigns little weight to the location of employee-witnesses. ***Applied Web Systems, Inc. v. Catalytic Combustion Corp*.,  1991 WL 70893, \*5 (N.D.Ill. 1991)**. Because these witnesses usually are

within the control of the parties, they are likely to appear voluntarily in either forum. *See Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.*, **706 F.Supp. 639, 641 (N.D.Ill. 1989)**.

Defendants have identified ten witnesses whose testimony they consider significant because they administer the Plans, handle investments and supervise the companies that manage the Plans' assets. Of these ten witnesses, all of whom live on the East Coast and eight of whom live in Maryland, five are retired and, thus, are non-party witnesses. Thus, Defendants have identified five non-party witnesses who will be inconvenienced if this matter is litigated in Illinois.

Plaintiffs stress that, contrary to Defendants' representations, key non-party witnesses are geographically diverse. Plaintiffs argue that, because Defendants have exported the process of running the Plans, key non-party witnesses in this litigation will be the service providers and fund managers, who are located in Illinois, Missouri, Massachusetts, New York, Pennsylvania and California, but not in Maryland. *See* Plaintiffs' Exhibit 1. Plaintiffs contend that hidden fees and expenses are charged at the fund or brokerage level and that Plaintiffs' money goes to the investment company and to other service providers, including the trustee, investment manager and record-keeper. Plaintiffs assert that these entities know where the money is going and that Defendants do not.

The convenience of the witnesses weighs heavily only to the extent that the witnesses may actually be unavailable for trial in one forum. *See, e. g., Heller Financial Inc. v. Midwhey Powder Co.*, **883 F.2d 1286, 1293 (7th Cir. 1989)**. Defendants contend that it will be difficult or impossible to compel unwilling non-party witnesses to testify in the Southern District of Illinois and that this difficulty weighs in favor of transfer. However, to support this contention, Defendants must be able to point to specific witnesses who may be unavailable to testify in this court and to provide

a general sense of why their testimony is material.  Defendants have not shown that the five witnesses they have identified as non-party witness may actually be unavailable or that they are unwilling to travel to Illinois voluntarily, making compulsory process unnecessary.  Without this information, the Court is not persuaded that Defendants must use compulsory processes to obtain witness testimony, particularly when the witnesses are Defendants' own retirees, who held key management positions.  Defendants are also more financially able to transport witnesses to the trial site.  *See, e. g., Stromberger v. 3M Co.,*  **1991 WL 83828, \*6 (N.D.Ill. 1991)**.

In contrast, Plaintiffs have identified numerous potential non-party witnesses who make important operational decisions and who are spread throughout the country.  On balance, it appears that the convenience of witnesses is a neutral factor or weighs slightly in favor of the Illinois forum.  ***See Hanley*, 6 F.Supp.2d at 775 (citing *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1168 (N.D.Ill. 1995)**.

### C.     Situs of documents

Defendants' contention that the relevant documents are located in Maryland does not tilt the balance in favor of transfer. Any documents maintained in paper form can be shipped to Illinois for trial, or scanned for electronic discovery and trial use. It is likely paper documents will be scanned for discovery irrespective of the situs of the case since that seems to be the trend in this digital age where jump drives the size of a cigarette lighter can hold multiple gigabytes of information and multi-page documents can be emailed around the world in seconds.  More importantly, account and expense information is often maintained in electronic form, such that electronic production of documents is available and convenient. Accordingly, Defendants have not carried their burden to show that this factor weighs in favor of transfer.

### D. Situs of material events

Defendants contend that the all alleged material events occurred in Maryland where the Plans are administered and the fiduciaries of the Plans are located. Plaintiffs do not concede that all important decisions are made in Maryland. They assert, rather, that "on the ground practices" are performed by people who are outside the Plans proper and who are spread across the country. The Court finds that this factor is neutral, favoring neither Maryland nor Illinois.

### E. The interests of justice

This factor focuses on the "efficient administration of the court system," rather than the private considerations of the litigants. ***Central States, Southeast and Southwest Areas Pension Fund v. Salasnek Fisheries, Inc., 977 F.Supp. 888, 892 (N.D.Ill. 1997) (citing *Coffey*, 796 F.2d at 221)***. Factors to consider under this prong include (1) the speediness of each district in concluding their proceedings, (2) the districts' familiarity with the applicable law, and (3) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. ***Amoco Oil Corp. v. Mobil Oil Corp., 90 F. Supp. 2d 958, 963 (N.D. Ill. 2000)***.

As to the first factor, Defendants cite stale (2005 rather than 2006) data from the Administrative Office of the United States Courts indicating that, in civil cases, the median number of months from filing to disposition in the District of Maryland is 8.9 months versus 9.5 months in the Southern District of Illinois. The current data (2006)[3] reflects those numbers are now 7.4 and 8.4, respectively. However, a more accurate picture of how the instant case is likely to proceed, since six months have already passed, limited discovery has been conducted and the case was stayed on Defendants' motion pending the venue determination, is to look at the statistical time frame from

---

[3] The statistics herein cited by the Court are from "Federal Court Management Statistics, 2006."

filing to trial. In the District of Maryland, the time frame is 25 months; in the Southern District of Illinois, it is 20.0 months. That difference can be explained, in part, by another statistic which is, in the Court's view, the most persuasive when considering the relative workload of the two districts—weighted filings.[4] This number takes into consideration the different amounts of time that district judges require to resolve various types of civil and criminal actions. The weighted filings per judgeship in the District of Maryland are 463; in the Southern District of Illinois, they are 352. That gives the District of Maryland, on weighted filings, a numerical standing of 39, when compared to all the other districts, while the Southern District of Illinois places 73rd. The inescapable conclusion, from a statistical standpoint, is that the average Maryland District Judge is busier than the average Southern Illinois District Judge, and, therefore, this case is likely to burden the District of Maryland more than the Southern District of Illinois.

Both parties agree that the second factor is not dispositive, and both districts are equally familiar with the applicable law and are capable of handling this ERISA case.

Defendants contend that the third factor favors Maryland, in that both Defendants are located in Maryland, and the administration of the Plans and alleged breaches of fiduciary duty would have occurred there. Plaintiffs respond that Plan participants manage their individual accounts within the Plans using the internet in this District and in each district where a participant is located. *See* Plaintiffs' Exhibit 6. In this District, Plan participants, *inter alia*, receive disclosures, access investment fund profiles, receive statements and transfer funds. *Id.* Thus, according to

---

[4]Average civil cases or criminal defendants each receive a weight of approximately 1.0. For more time-consuming cases, higher weights are assessed (*e. g.*, a death-penalty habeas corpus case is assigned a weight of 12.89), and cases demanding relatively little time from judges receive lower weights (*e. g.*, a defaulted student loan case is assigned a weight of 0.031).

9

Plaintiffs, all of the alleged breaches of fiduciary duty occurred in the Southern District of Illinois as much as in any other district. Therefore, Plaintiffs contend that this community has a strong relation to the occurrences.

The Court finds Plaintiffs' argument compelling. Defendants' employees earn wages at the three facilities within this District and these employees pay into the Plans' funds; employees access and manage their accounts within this District; and the alleged breaches of fiduciary duty impact the financial security of employees within this District. While the facilities here may have nothing to do with administering and managing the Plans, the participants here may actively administer and manage their own investments. Therefore, this District has a strong interest in this action. This factor does not favor transfer to Maryland.

### III.  Conclusion

After careful consideration, the Court finds that Defendants have not established sufficient facts to warrant disturbing Plaintiffs' choice of forum. Accordingly, the court **DENIES** Defendants' Motion to Transfer Venue (Doc. 18). Because the Court has determined that venue appropriately lies in this District, the Court lifts the stay entered on November 8, 2006. Plaintiffs shall respond to Defendants' pending motion to dismiss (Doc. 20) and motion to strike demand for jury trial (Doc. 22) on or before April 20, 2007.

**IT IS SO ORDERED.**

**DATED this 20th day of March, 2007**

                                              **s/Michael J. Reagan**
                                              **MICHAEL J. REAGAN**
                                              **United States District Judge**