IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ANTHONY ABBOTT, ERIC** | ) | |
| **FANKHAUSER, LLOYD DEMARTINI,** | ) | |
| **JACK JORDAN, and DENNIS** | ) | |
| **TOMBAUGH, individually and** | ) | |
| **on behalf of all those similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | Case No. 06-cv-0701-MJR |
| | ) | |
| **LOCKHEED MARTIN** | ) | |
| **CORPORATION and LOCKHEED** | ) | |
| **MARTIN INVESTMENT** | ) | |
| **MANAGEMENT COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**I.      Introduction**

Anthony Abbott, Eric Fankhauser, Lloyd DeMartini, Jack Jordan and Dennis Tombaugh filed this class action against Lockheed Martin Corporation and Lockheed Martin Investment Management Company (collectively, "the company," unless specificity is needed) under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 *et seq.* ("ERISA"). The class alleges that the fiduciaries of the Plans breached their duties to the Plans as a whole, resulting in lost retirement savings of hundreds of millions of dollars.

On April 3, 2009, the Court continued this action on its own motion, noting that a number of variables could impact and alter its fair outcome. Among the variables identified by the Court was Plaintiffs' alerting the Court and opposing counsel that Mr. Abbott, on behalf of the Plan,

1

intended to pursue a direct action under 29 U.S.C. §§ 1132 and 1109. A direct action allegedly allows Mr. Abbott to pursue the company stock fund claims, which the Court would not permit by way of class action. The Court directed the parties to meet and confer with a view toward preparing a briefing schedule on this issue. The matter is now fully briefed and ready for disposition.[1]

**II.     Analysis**

ERISA expressly provides jurisdiction for a participant to bring an action to recover damages caused to the plan by a fiduciary's breach of duties. **29 U.S.C. § 1132(a)**.[2] In *Massachusetts Mut. Life Ins. Co. v. Russell*, **473 U.S. 134 (1985)**, the United States Supreme Court held that a participant in a disability plan that paid a fixed level of benefits could not bring suit under § 502(a)(2) to recover consequential damages arising from delay in the processing of her claim. The Court reasoned that, under § 409, "... not only is the relevant fiduciary relationship characterized at the outset as one 'with respect to a plan,' but the potential personal liability of the fiduciary is 'to make

---

[1] In making its ruling, the Court adhered to the April 7, 2009, briefing schedule (Doc. 242) and did not consider supplemental filings, which the Court construed as sur-reply briefs. *See* SDIL-LR 7.1(g).

[2] (a) Persons empowered to bring a civil action
 A civil action may be brought--
   (1) by a participant or beneficiary--
     (A) for the relief provided for in subsection (c) of this section, or
     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;... **29 U.S.C. § 1132(a)** (**ERISA §§ 502(a)(2) and (a)(3)**).

2

good *to such plan* any losses *to the plan* ... and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*....'" **Russell, 473 U.S. at 140 (emphasis in original)**.

However, by 2008, a sea change had occurred in the type of plan offered to employees, leading the United States Supreme Court to clarify the right of employees to sue plan fiduciaries for mismanaging individual accounts - rather than just the plan as a whole. ***LaRue v. DeWolff, Boberg & Associates, Inc,* 552 U.S. 248, 128 S.Ct. 1020 (2008)**. The Court distinguished its holding in *Russell*, which dealt with a defined benefit plan, stating that the "landscape" of employee benefit plans had changed, and "defined contribution plans dominate the retirement plan scene today." ***LaRue*, 128 S.Ct. at 1025.** The Court explained, "Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." ***Id*.** As a result, the Court held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." ***Id*. at 1026**.

    A.    <u>**Plaintiffs waived the direct action theory.**</u>

The company contends that Plaintiffs' direct action theory is an attempt to evade the Court's ruling that intra-class conflicts preclude class certification on Plaintiffs' company stock fund claims. *See* Doc. 239.³ The company submits that Plaintiffs did not raise this theory until after their

---

³The Court denied class certification as to the company stock funds, finding, "The interests of the average class members compared to the 'day trader' members are antagonistic and lack the cohesion envisioned by the typicality requirement because it is the day traders that create the need for surplus cash to fund their frequent trading activities, and it is this very surplus cash about which Plaintiffs complain. Plaintiffs claim that those who were not day traders were further harmed because,

attempt for class certification failed, by which time they had already defined the scope of their case and had represented to the Court that they had no other basis for Plan-wide recovery. On this ground, the company asserts that Plaintiffs have waived the right to pursue damages for absent Plan participants through any other mechanism.

In support of its contentions, the company states that Plaintiffs failed to raise the direct action theory in the initial complaint, the amended complaint, and in the first and second motions for class certification. Indeed, according to the company, Plaintiffs made it abundantly clear that they had no other avenue for obtaining Plan-wide relief, insisting, "The need for class certification is clear.... Plaintiffs seek relief for the Plans as a whole. Class certification is required to grant that relief and is justified under the circumstances." Doc. 249, p. 3 (quoting Doc. 161, memorandum in support of second motion to certify class). In sum, the company maintains that the absence of any discussion of a direct action theory prior to the Court's ruling on class certification coupled with Plaintiffs' adamant insistence that failure to certify a class would destroy their ability to recover substantial damages against the breaching fiduciaries effected a waiver of this legal theory.

Plaintiffs respond that they did not waive their right to a direct action to recover all Plan-wide damages. Specifically, Plaintiffs assert that in ¶ 20 of the amended complaint, they indicated that their claims were brought on behalf of the Plan, as follows: "Plaintiffs seek relief on behalf of the Plan under 1109 and 1132." They submit that in both the initial and amended complaints they stated that they sought recovery for all losses "on a plan wide basis" and that they were suing

---

rather than charging expenses per transaction, the expenses were spread across all Plan participants. Day traders benefitted from the unitized structure of the funds in that their settlements were not delayed, and they avoided additional fees. In sum, the day traders' claims do not have the same essential characteristics and interests as the class at large. Their interests are instead antagonistic and irreconcilable."

"individually and on behalf of all those similarly situated." Plaintiffs explain that, as soon as the Court indicated that it would deny certification, they promptly *reiterated* their right to maintain a direct action for plan-wide relief as alleged in the complaint.

It is undisputed that Plaintiffs could individually pursue actions to restore their individual accounts. ***See LaRue, supra***. However, the case caption, which indicates that Plaintiffs sue "individually and on behalf of all those similarly situated," does not presage a direct action theory but merely states the obvious - that Plaintiffs sue on behalf of themselves and a similarly situated class of employees. Furthermore, the general allegations to which Plaintiffs point fail to give the company "fair notice of what the ... claim is and the grounds upon which it rests." ***Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009),*** *quoting Erickson v. Pardus***, 551 U.S. 89, 93 (2007);** *see also  Holtzman v. Caplice,* **2008 WL 2168762, \*2 (N.D.Ill. 2008)**. As the Seventh Circuit explained in ***Brooks***,

> First, a plaintiff must provide notice to defendants of [his] claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. ***Id**., explicating Erickson***, 551 U.S. 89,** *Bell Atl. Corp. v. Twombly***, 550 U.S. 544 (2007) and** *Ashcroft v. Iqbal***, --- U.S. ----, 129 S.Ct. 1937 (2009)**.

Plaintiffs' pleadings failed to provide adequate notice to the company that they intended to pursue a direct action theory.

Moreover, despite the filing of, literally, hundreds of documents comprising thousands of pages, nothing alerted the undersigned District Judge to Plaintiffs' intent to pursue a direct action theory prior to the April 3, 2009, teleconference, some two-and-one-half years after the case was filed and after the Court notified the parties that it would grant class certification, except for the company stock funds. *See* Docs. 236-238. The absence of any discussion of the direct action theory in the

amended complaint and the actual disavowal of an alternative mechanism for Plan-wide relief effectively waived the direct action theory.

### B. Plaintiffs' direct action theory cannot be sustained.

In the alternative, the Court finds that Plaintiffs' direct action theory cannot be sustained because this action must be structured to bind all Plan participants to the holdings of this Court lest the company be subjected to multiple, redundant suits. Even if a direct action had been properly pled, allowing it to proceed as to the company stock funds would be inappropriate where the Court has already found that an intra-class conflict precludes class certification on those claims.

In support of their direct action theory, Plaintiffs cite Judge Pallmeyer's decision in ***Waldron v. Dugan*, 2007 WL 4365358 (N.D. Ill. 2007)** for the proposition that ERISA does not require that an action to recover for a fiduciary's breach be brought as a class action or derivative action. This Court finds more compelling on the facts of this case, Judge Shadur's decision in ***Fish v. Greatbanc Trust Co.,* 2009 WL 3649814 (N.D.Ill. 2009)**, in which he disagreed with ***Waldron***. Judge Shadur opined that permitting the action brought in a representative capacity to go forward without the type of protections provided by Rule 23, 23.1 or their equivalent "would be overly myopic." ***Fish*, 2009 WL 3649814, at \*1**. Judge Shadur followed the lead of ***Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)**, which had in turn followed the lead of the Supreme Court in ***Russell***. ***Coan*** framed the subject as follows:

> But, like the district court, we do not see how an action can be brought in a 'representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties. It seems to us that the representative nature of the section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests they purport to represent. ***Fish*, at \*1,** *quoting Coan*, *id.* **at 259 (internal citation omitted)**.

Judge Shadur concurred wholeheartedly in the ***Coan*** court's view that Congress's silence on the

6

question of mandatory and permissive provisions relating to class actions "does not mean that Congress intended to allow individual participants and beneficiaries to bring suit on behalf of an employee benefit plan without observing any procedural safeguards for other interested parties. It seems to us, rather, that Congress was content to leave the procedures necessary to protect absent parties, and to prevent redundant suits, to be worked out by parties and judges according to the circumstances on a case by case basis." ***Fish,* at \*2,** *quoting Coan, id.* **at 260**.

In the current proceeding, the Court has already determined, and it is the law of the case, that - as to the company stock funds - an intra-class conflict exists. As stated above, the interests of average class members compared to "day trader" members who invest in the company stock funds are antagonistic and irreconcilable. Because there are no procedural safeguards that the Court can put in place to protect absent members and to prevent redundant suits, this case may not proceed as to the company stock funds under a direct action theory.

### III.    Conclusion

For all of these reasons, the Court **FINDS** that Plaintiffs cannot maintain a direct action for Plan-wide recovery and pursue the company stock fund claims in their amended complaint regardless of the Court's denial of class certification.

**IT IS SO ORDERED.**

**DATED this 10th day of February, 2010**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**