IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY ABBOTT, ERIC             )
FANKHAUSER, LLOYD DEMARTINI,     )
JACK JORDAN, DENNIS              )
TOMBAUGH, DAVID KETTERER and    )
ROGER MENHENNETT, individually   )
and on behalf of all those similarly )
situated,                        )
                                 )
          Plaintiffs,            )
                                 )          Case No. 06-cv-0701-MJR
vs.                              )
                                 )
LOCKHEED MARTIN CORPORATION )
and LOCKHEED MARTIN              )
INVESTMENT MANAGEMENT            )
COMPANY,                         )
                                 )
          Defendants.            )

MEMORANDUM AND ORDER

REAGAN, District Judge:

I.     Introduction

        This matter is before the Court on Plaintiffs' Amended Motion for

Class Certification (Doc. 343).  Plaintiffs Anthony Abbott, Eric Fankhauser,

Lloyd DeMartini, Jack Jordan, Dennis Tombaugh, David Ketterer and Roger

Menhennett are participants in the Salaried Savings Plan ("SSP") and/or the

Hourly Employee Savings Plan Plus ("HSP") for which Defendant Lockheed

Martin Corporation ("LMC") is the plan sponsor and a named fiduciary.

Defendant Lockheed Martin Investment Management Company ("LMIMCo"),

a wholly-owned subsidiary of LMC, is responsible for the Plans' investments

and the appointment, removal, and replacement of investment managers and trustees.  LMIMCo is also a named fiduciary for the Plans.[1]

Pursuant to **29 U.S.C. §1132(a)(2) and (3)**, Plaintiffs bring suit on behalf of themselves and all those similarly situated for breach of the fiduciary duties imposed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 *et seq.* ("ERISA").  Plaintiffs allege that the fiduciaries of the Plans breached their duties under ERISA, resulting in lost retirement savings of hundreds of millions of dollars.

This Court enjoys subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** and **29 U.S.C. § 1132(e)(1)**.  Venue is proper pursuant to **29 U.S.C. § 1132(e)(2)**.

This case was filed on September 11, 2006.  Since then, Plaintiffs have twice amended their complaint, and the Court has narrowed their claims to three:  (1) whether excessive fees paid by the Plans provide a basis for Plaintiffs' fiduciary breach claim; (2) whether the Stable Value Fund ("SVF") was properly disclosed to Plan participants and was a prudent investment option for them; and (3) whether the Company Stock Funds ("CSF") were a prudent investment option for Plan participants.

This Court previously granted class certification as to Plaintiffs' excessive fees and SVF claims and denied class certification as to the CSF claims.  LMC thereafter petitioned for an interlocutory appeal of the grant of

---

[1] Except where specificity is required, the Court will refer to Defendants collectively as "LMC."

class certification, and Plaintiffs cross-petitioned as to their claim that was denied.  The United States Court of Appeals for the Seventh Circuit granted LMC's petition, denied Plaintiffs' cross-petition, and vacated and remanded the class certification order. ***In re Lockheed Martin Corp.*, 412 F. App'x 892 (7th Cir. 2011)**. The Seventh Circuit directed that the parties and the Court should be guided by its decisions in ***Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)**, and ***Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011)**, in arguing and resolving issues related to class certification. ***In re Lockheed Martin Corp.*, 412 F. App'x at 893**.

Plaintiffs thereafter filed a renewed motion for class certification (Doc. 343).  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiffs' motion.

II.   <u>Discussion</u>

Class certification is governed by Federal Rule of Civil Procedure 23.  A plaintiff must demonstrate that he satisfies all of the requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation; and one of the requirements of Rule 23(b). ***See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)**; ***Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)**.  The plaintiff bears the burden to "affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, *etc.*" ***Wal-***

***Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original)**.

In challenges involving defined-contribution pension plans, "[t]he question whether to certify a class … is … a complex one" that "will turn on the circumstances of each case." ***Spano*, 633 F.3d at 582.** "[S]ome of the determinations required by Rule 23 cannot be made without a look at the facts." ***Id.* at 583;** *see also id.* **at 591 ("…short-cuts in the class certification process are not permissible").** Assessing a plaintiff's motion for class certification requires the Court to engage in "a rigorous analysis" to determine whether "the prerequisites of Rule 23(a) have been satisfied." ***Wal-Mart*, 131 S. Ct. at 2551,** *quoting Gen. Tel. Co. of S.W. v. Falcon*, **457 U.S. 147, 161 (1982)**. If a court deems certification appropriate, "an order (or incorporated opinion) must include two elements: '(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.'" ***Ross v. RBS Citizens, N.A.*, 2012 WL 251927, at *3 (7th Cir. Jan. 27, 2012),** *quoting Wachtel ex rel. Jesse v. Guardian Life Ins. Co.*, **453 F.3d 179, 187-88 (3d Cir. 2006)**. As the Seventh Circuit has admonished, clarity in class certification orders is essential to facilitate appellate review. ***Id., citing* Comm. on Rules of Practice and**

Procedure, *Report of the Judicial Conference* **8**, **11 (Sept. 2002)**; *see Spano*, **633 F.3d at 589.**

   A.   Excessive Fees Class

      Plaintiffs seek to certify a plan-wide class on the basis that the Plans caused them to incur unreasonable administrative expenses.   In compliance with ***Spano***, the Excessive Fees Class is temporally limited. **633 F.3d at 583—84**. The class period begins on the earliest date allowed by the Court's summary judgment order applying ERISA's six-year statute of limitations (Doc. 226 at 12).   ***See* 29 U.S.C. §1113**. The class period ends on the discovery cut-off date (Doc. 108). Plaintiffs request certification of the following class:

> All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan from September 11, 2000 through December 22, 2008, excluding the Defendants, other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

   1.   Numerosity

      Rule 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable."   This is not an onerous burden since "courts have found the numerosity element satisfied where the putative class would number in the range of as few as ten to forty class members." ***Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374,**

**378 (S.D. Ill. 2008)**.  Here, the Plans had more than 100,000 participants. That is sufficient to satisfy the requirement of Rule 23(a)(1).

2.   <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  "It is enough that there be one or more common questions of law or fact."  ***Spano*, 633 F.3d at 585**.  In a defined-contribution plan, "fund participants operate against a common background."  ***Id.***  As to fees, Plaintiffs challenge, at least in part, the propriety of fees that were charged to every participant in the Plans.[2]  That is sufficient to satisfy the requirement of Rule 23(a)(2).

3.   <u>Typicality</u>

Rule 23(a)(3) provides that the "claims ... of the representative parties" must be "typical of the claims ... of the class."  To satisfy this requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group."  ***Id.*, 633 F.3d at 586**.

In ***Spano***, the Seventh Circuit explained that determining whether a plan-wide class is suitable depends on whether fees are "fund-specific," in which case a plan-wide class would be inappropriate, or "imposed equally on every plan participant," in which case a plan-wide class

---

[2] Plaintiffs' Second Amended Complaint identifies 18 common issues of law or fact.

would be warranted.  *Id.* **at 590**.  The court emphasized that "[p]recision on this point is essential to ensure that the class representative's claim is typical."  *Id.*

Here, a plan-wide class is warranted because the claimed excessive fees were imposed on all participants uniformly, as opposed to being charged on a fund-specific basis.  *See id*.  Plaintiffs have specified that the disputed administrative fees were charged to each participant as a uniform percentage of the participant's total account value and did not vary by fund.  To the extent that there are differences among class members' damages, those differences would be a product of mathematics based on their account balances in the Plans.  Because every participant paid a portion of the alleged excessive fee, any participant's claim is typical of the class.  *See id.* **at 590**.

As limited, the claim is that the fee characterized as an administrative expense was an unreasonable expenditure for Plan participants.  Since Plaintiffs' challenge is to the sum of plan-wide fees, it does not include revenue sharing, which did not exist for every fund option and for which the amount varied.[3]  LMC agrees that Plaintiffs satisfy the typicality requirement as to their overall fees challenge since their claim is

---

[3] In this context, revenue sharing is indirect compensation – or indirect use of fund assets – for investment adviser fees.  State Street Bank and Trust Company, with its affiliates, served as trustee and recordkeeper for the Plans as well as the investments manager for several of the Plans' investment fund offerings.  State Street received direct compensation from Defendants as well as revenue sharing from certain of the Plans' outside investment managers.

limited to the administrative fees charged to each Plan participant as an annual percentage of his assets and they do not incorporate revenue sharing into their analysis.

Plaintiffs have identified each of the named Plaintiffs as a class representative for the fees class.  LMC has challenged the appropriateness of only one of those Plaintiffs, Menhennett.  LMC contends that Menhennett is not typical (or adequate, for that matter), because he executed a release of his claims in connection with his termination.

On July 9, 2012, the Court denied Plaintiffs' motion to exclude the undisclosed release of claims and concluded that the release Menhennett signed in May 2010 is valid and applicable to his claim (Doc. 366).

As the Seventh Circuit recently recognized, a release is effective in an ERISA case if it was "made knowingly and voluntarily," *Howell*, **633 F.3d at 559**.  "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."  *CE Design Ltd. v. King Architectural Metals, Inc.*, **637 F.3d 721, 726 (7th Cir. 2011)**, *quoting J.H. Cohn & Co. v. American Appraisal Assocs.*, **628 F.2d 994, 999 (7th Cir. 1980)**.

The evidence shows that Menhennett knowingly and voluntarily signed a release of his claims in connection with his termination.  This

defense would destroy the required typicality of the class and call into question the adequacy of his representation.  As a result, Menhennett does not meet the requirements of typicality (or adequacy) to serve as a class representative in the excessive fees class or any other class for which Plaintiffs seek certification.

The Court concludes that Abbott, Fankhauser, DeMartini, Jordan, Tombaugh, and Ketterer satisfy the typicality requirement, but Menhennett does not.  Menhennett is excluded as a class representative.

4.   <u>Adequacy</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In order to satisfy the requirements of Rule 23(a)(4), the class representative must "'possess the same interest and suffer the same injury as the class members.'"  ***Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002), *quoting E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)**.  Accordingly, in evaluating adequacy, a court must make sure that there are no inconsistencies between the interests of the named party and the class that he or she represents. ***Uhl*, 309 F.3d at 985, *citing Amchem Prods.*, 521 U.S. at 625)**.

Plaintiffs have identified all of the named plaintiffs as class representatives for the fees class.  The Court concludes that Abbott, Fankhauser, DeMartini, Jordan, Tombaugh and Ketterer satisfy the adequacy

requirement.   As above, the Court excludes Menhennett as a class representative.

5.   Rule 23(b)

Having determined that the requirements of Rule 23(a) are satisfied as to the excessive fees claim, the Court turns to the question of whether a class action can be maintained under one of Rule 23(b)'s three subsections.   Rule 23(b) authorizes certification of a class action if the prerequisites of subdivision (a) are satisfied, and if:

> (1)   prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests....

In this case, the Court finds – and LMC does not dispute - that the failure to certify the proposed class would result in inconsistent or varying adjudications with respect to the individual members of the class, which would establish incompatible standards of conduct for LMC, thereby making this action appropriate for certification under Rule 23(b)(1)(A). In addition, adjudications with respect to individual members of the proposed class would, as a practical matter, be dispositive of the interests of the other

members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

6. <u>Rule 23(g)</u>

Having determined that Plaintiffs' excessive fees claim is appropriate for class certification, the Court must also address the adequacy of counsel. Rule 23(g) provides, in pertinent part,

> (1) **Appointing Class Counsel**. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;...
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;...

Plaintiffs ask the Court to appoint Schlichter, Bogard & Denton, LLP, as class counsel for the same reasons as set forth in its previous class certification motion. LMC does not object. As the Court has previously observed, this firm has extensive experience in litigating large and complex

class actions and has been designated as class counsel in similar breach of fiduciary duty cases filed in this District.  The Court concludes that the firm of Schlichter, Bogard & Denton is adequate to serve as class counsel for the excessive fees class.

        B.    <u>Stable Value Fund</u>

In the SVF claim, Plaintiffs contend that LMC imprudently managed the Plans' SVF option by investing excessively in money market investments as opposed to stable value products that would have provided the Fund higher returns without significantly higher risk. In compliance with *Spano*, the SVF Class is temporally limited. **633 F.3d at 583−84**. The class period begins on the earliest date allowed by the Court's summary judgment order applying ERISA's six-year statute of limitations. Doc. 226 at 12, *citing* 29 U.S.C. §1113.  The class period ends on the date Plaintiffs concede the composition of the SVF was changed in order to generate sufficient returns, such that class members ceased to suffer losses. For their SVF claims, Plaintiffs seek the certification of the following class:

> All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan whose accounts held units of the Stable Value Fund (SVF) from September 11, 2000 through September 30, 2006 and whose SVF units underperformed relative to the Hueler FirstSource Index. Excluded from this class are the Defendants, other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

- 12 -

In this Court's first order on class certification, a plan-wide class was approved for purposes of the SVF claims.   The Court must now reconsider that decision in light of ***Spano*** and the changes to Plaintiffs' claim and class definition.

### 1.   Numerosity and Commonality

LMC does not dispute that the SVF satisfies the requirements of numerosity and commonality.  The Court agrees that these requirements are satisfied.  Plaintiffs estimate that the SVF Class contains more than 50,000 members (more than 50,000 SSP participants and 6,000 HSP participants in 2005 alone).   That estimate is supported by the declaration of an expert witness, Steve Pomerantz, Ph.D.  Doc. 344-2, ¶ 7 (estimating approximately 50,000 participants per year during the class period).   Moreover, Plaintiffs' challenge to the SVF Fund as a whole raises at least one common question that satisfies the requirement of commonality, such as whether LMC breached its fiduciary duties under 29 U.S.C. §1104(a)(1) in its management of the SVF and what prudent alternative exists by which to determine the Plans' losses under 29 U.S.C. §1109(a), from which each class member will derive his or her individual loss.

### 2.   Typicality and Adequacy

As to typicality and adequacy, there are three points of dispute: (1) whether Plaintiffs' claims are suitable for class treatment, (2) whether the proposed class representative, David Ketterer, has standing to raise

those claims and (3) whether considerations as to Ketterer preclude certification.  Because the Court finds that Plaintiffs' claims are not suitable for class treatment, it will not reach the question of whether the sole proposed class representative, Ketterer, has standing to bring these claims or is otherwise precluded from serving as a class representative.

The "claims … of the representative parties" must be "typical of the claims … of the class[.]" **Fed. R. Civ. P. 23(a)(3)**. Claims are typical when they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." **_Arreola v. Godinez_, 546 F.3d 788, 798 (7th Cir. 2008) (quotation marks and citation omitted)**. Typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses [they] might have against certain class members[.]" **_CE Design_, 637 F.3d at 725, _quoting Wagner v. NutraSweet Co._, 95 F.3d 527, 534 (7th Cir. 1996)**. To satisfy typicality in an ERISA fiduciary breach case, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." **_Spano_, 633 F.3d at 586**.

Plaintiffs claim that LMC failed to administer the SVF option prudently and failed to bolster returns beyond money market levels, as Plan documents required.  Plaintiffs assert that LMC failed to perform proper oversight and make necessary changes to the Plans, or to make those

changes in a timely manner.  Plaintiffs also contend that the managers of the SVF heavily invested in short-term money market funds, as a result of which, the SVF was a very low-yielding fund that greatly underperformed an index of stable value funds.  This caused Plan participants' investment to fail to keep pace with inflation, and participants were damaged thereby.

Ketterer invested in the SVF during the class period and suffered losses under the class's measure of plan losses (Doc. 344-2 at 6–7 ¶¶ 14–15).  As such, he asserts claims that are typical of the class because the class is defined as those participants who suffered losses under the above-described theory of the case. According to Plaintiffs, the same course of conduct by LMC gives rise to the claims of all members of the class, as limited, and those claims are all based on the same legal theory. **See Arreola, 546 F.3d at 798**.

The Court agrees with Plaintiffs that their proposed classes are "better-defined and more-targeted," as required by **Spano**.  **633 F.3d at 588**. Nevertheless, a fundamental problem exists with the class definition that leads the Court to conclude that the class, as defined, cannot be certified.  Plaintiffs have divided SVF investors into two categories:  those whose investments outperformed the Hueler FirstSource Index[4] (those who might have had "no complaint" with the SVF) and those whose investments

---

[4] "**FIRSTSource Index** is the first relevant pool of aggregate industry data on returns for stable value separate accounts. Index data encompasses approximately 150 plans and has been complied [sic] from numerous stable value investment management firms and several independent plan sponsors with assets totaling approximately $85 billion." http://www.hueler.com/firstsource.htm

underperformed that benchmark within the six-year class period.

By framing the class in this way, Plaintiffs attempt to describe a class that would comport with the Seventh Circuit's determination that "[a] claim of imprudent management … is not common if the alleged conduct harmed some participants and helped others[.]" ***Spano*, 633 F.3d at 588**. In other words, Plaintiffs seek to avoid an intra-class conflict by identifying and excluding those participants who *benefited* from the SVF. ***See id.* at 591**.

In attempting to resolve this issue, Plaintiffs have created other issues, equally serious.  Setting the Index as the exemplar by which to judge stable value funds is analogous to the failed attempt by the plaintiffs in ***DeBruyne*** to compare the percentage loss of the Equitable Balanced Fund with the percentage gains and losses of 22 other publicly-traded balanced funds. ***DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 462 (7th Cir. 1990)**. The Seventh Circuit reasoned, "Hanan's [plaintiffs' expert's] assertions of what a 'typical' balanced fund portfolio manager might have done in 1987 say little about the wisdom of Equitable's investments, only that Equitable may not have followed the crowd." ***Id.* at 465**.  Although the plaintiffs (and Hanan) argued that the balanced fund was "out of balance," the Court observed that plaintiffs "did not invest in Hanan's balanced fund, they invested in Equitable's Balanced Fund and the Plan gave Equitable freedoms that Hanan simply ignore[d]." ***Id.* at 464.**

As applied here, Plaintiffs' claiming that a typical stable value fund would have achieved a particular return, as shown by reference to the Hueler Index, says little about the wisdom of LMC's investments. **See id. at 465**. Furthermore, participants chose the level of risk and return that they were willing to accept, based on Plan documents. On this issue, the Court finds compelling the Declaration of Lassaad Turki, LMC's expert witness, who opined that to suggest that an alternative stable value fund would have offered superior returns without increased risk defies basic economic principles and the reality of the SVF's structure. There is no evidence to show that rather than investing in the SVF, participants would have invested in a fund with 40% or less money market holdings (the Index benchmark), and no showing that this percentage is "prudent." Moreover, reference to the Index serves to highlight the reason for the intra-class conflict: some participants *benefited* from the SVF because their SVF investments outperformed the Index.

Like the plaintiffs in **George v. Kraft Foods Global, Inc., 2011 WL 5118815 (N.D.Ill. 2011)**, who relied on Vanguard Funds as their comparators, Plaintiffs' choice of the Hueler Index as the comparator for purposes of the class definition "builds into the class definitions assumptions about the complicated and unsettled issues of loss and causation." **George, 2011 WL 5118815, at *8**. In **George**, the plaintiffs sought to include in the class only those "harmed" by the defendants' alleged fiduciary breach.

*Id.*  So, the plaintiffs limited the proposed classes to participants whose investments underperformed in comparison to Vanguard Funds.  *Id.* Consequently, the class definition assumed that underperformance of the Fund in comparison with Vanguard Funds was the proper measure of loss. However, whether the proper measure of performance and loss was to be determined by comparison to the Vanguard Funds was unresolved, and the plaintiffs could not use class certification to "backdoor" a resolution of this contested issue in their favor.  *Id.*  The *George* court then noted that the Supreme Court in *Wal-Mart,* **131 S.Ct. 2541**, and the Seventh Circuit in *Spano* had emphasized that it is the plaintiffs' burden to "affirmatively demonstrate" that the proposed class definition is appropriate.  *Id*.

Plaintiffs herein have limited the proposed classes to participants whose investments underperformed in comparison to Hueler Index.  But it is yet to be determined whether the proper measure of performance and loss is to be made by that comparison.  It remains unresolved whether the Index is the appropriate benchmark by which to judge whether the SVF was an imprudent investment option.

Plaintiffs argue that the Court need not make this determination at this stage of the litigation.  Citing *Coopers & Lybrand v. Livesay*, **437 U.S. 463, 469 n.11 (1978)** and **Fed. R. Civ. P. 23(c)(1)(C)**, Plaintiffs assert that, since the Court can amend class certification at any time, the current class definition necessarily is tentative until the merits question is

resolved. They submit that LMC is free to argue for a different method for calculating plan losses if LMC is found to have breached its fiduciary duties.

But the decision that the Hueler Index is not an appropriate measure of damages is not the sort of decision that is "inherently tentative." *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, **485 U.S. 271, 277 (1988).** In other words, it is not a decision that the court "ordinarily would expect to reassess and revise … in response to events occurring 'in the ordinary course of litigation.'" **485 U.S. at 277,** *quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* **460 U.S. 1, 13, n.14 (1983)**. And even though it would be, as Plaintiffs contend, LMC's burden to prove that losses are less than what Plaintiffs assert, Plaintiffs must, in the first instance, carry their burden of affirmatively demonstrating that the proposed class definition is appropriate.

Plaintiffs have not satisfied the typicality requirement as to their SVF theory, and their motion for class certification as to this Fund must be denied. This is not to say that it would be impossible to certify an SVF class, only that Plaintiffs have not now articulated a certifiable claim as to the prudence of the SVF.

C.   Company Stock Fund ("CSF")

Plaintiffs contend that LMC imprudently managed the Plans' CSF options by holding excessive amounts of cash and incurring excessive expenses that diluted participants' returns from what was supposed to be an

investment in Lockheed Martin stock. In compliance with **Spano**, the CSF Class is temporally limited. **633 F.3d at 583–84**. The class period begins on the earliest date allowed by the Court's summary judgment order applying ERISA's six-year statute of limitations (Doc. 226 at 12). **See 29 U.S.C. §1113**. The class period ends on the discovery cut-off date (Doc. 108). Plaintiffs seek to certify two subclasses of investors in the CSF:

> **CSF subclass, September 2000 – July 2002**: All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan whose accounts held units of the Company Common Stock Fund, Hourly ESOP, or Salaried ESOP, and whose units underperformed relative to Lockheed Martin Common Stock, from September 11, 2000 through July 31, 2002. Excluded from this class are participants who bought and sold units in those funds within a 48-hour period. Further excluded from this class are the Defendants and other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

> **CSF subclass, August 2002 – December 2008:** All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan whose accounts held units of the Company Common Stock Fund, Hourly ESOP, or Salaried ESOP, from August 1, 2002 through December 22, 2008, and whose units underperformed relative to Lockheed Martin Common Stock. Excluded from this class are the Defendants and other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

All of the Plaintiffs except Jack Jordan seek to represent this class.[5]

### 1.    Numerosity

The Court finds that the numerosity requirement is met as to the subclasses.  Plaintiffs have produced evidence that each subclass includes thousands of participants from throughout the United States.  LMC does not dispute this finding.  Both of the CSF subclasses satisfy Rule 23(a)(1).  **See Spano, 633 F.3d at 585**.

### 2.    Commonality

The Court finds that the CSF subclasses include common questions of law and fact.  These questions include whether LMC mismanaged the CSFs and what is the proper measure of the losses to the Plans that LMC would have to make good under §1109(a).  LMC does not dispute this finding.  Both of the CSF subclasses satisfy Rule 23(a)(2).  **See Spano, 633 F.3d at 585–86, 588–89**.

### 3.    Typicality

By creating two subclasses and excluding from the September 2000 – July 2002 subclass those participants who bought and sold units in the CSF within a 48-hour period, Plaintiffs attempt to cure the day-trader problem which the Court found precluded certification of this class in its prior

---

[5] DeMartini, Menhennett, Ketterer, Tombaugh, and Fankhauser all invested in the salaried employees' ESOP. *Id.* ¶24. Abbott invested in the hourly employees' ESOP. *Id.* DeMartini, Ketterer, and Fankhauser also invested in the company common stock fund. *Id.* ¶25.  Jordan had reached the age threshold under the Plan to diversify his ESOP investments by the time period at issue.

class certification order (Doc. 239, pp. 11–14). The first subclass ends and the second subclass begins on the date that, according to Plaintiffs, LMC implemented changes to the Plans that resolved the day-trading issue.

Quoting *Christianson v. Colt Indus. Operating Corp.*, **486 U.S. 800, 816 (1988)**, LMC contends that Plaintiffs' motion should be denied under the law-of-the-case doctrine, which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." LMC submits that the Court has already ruled that Plaintiffs' CSF claims suffer from an intra-class conflict and that the conflict cannot be cured by the creation of subclasses. Plaintiffs respond that the Seventh Circuit's order granting LMC's Rule 23(f) Petition vacated this Court's entire class certification order, such that there is no law of the case.

On this issue, LMC points to *Tate v. Showboat Marina Casino P'ship*, **431 F.3d 580 (7th Cir. 2005),** where the Court observed,

> [T]he Supreme Court has specified considerations that a court should weigh in deciding whether to follow or to overrule a previous decision. "[W]hen this Court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case. Thus, for example, we may ask whether the rule has proven to be intolerable simply in defying practical workability; whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; or whether

facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification."

**Tate, 431 F.3d at 583, *quoting Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854-55 (1992)(additional citations omitted)**.

Weighing these considerations, the Court finds that revisiting its April 3, 2009, Order is appropriate.  The basis for the Court's decision was the existence of an intra-class conflict.  If Plaintiffs have succeeded in curing this conflict, then the facts have changed and the Court's original decision robbed of justification.  LMC does not assert that it will be prejudiced by the Court's reviewing this issue, and certainly no discovery would have to be undertaken.  So, the question is, would the Court now reach the same conclusion as to certifying the CSF that it reached in April 2009.

### CSF subclass, September 2000 – July 2002 ("Subclass 1")

Plaintiffs no longer challenge the existence of an intra-class conflict, but they claim to have cured the conflict by excluding "day traders" from the subclass definition.  However, they have failed to "affirmatively demonstrate" that Subclass 1 satisfies Rule 23(a)'s requirements of typicality and adequacy of representation.  In particular, it would not cure the intra-class conflict to exclude only persons who made multiple trades within 48 hours.  Plaintiffs have conceded that there is no industry-accepted definition of a "day trader," and they have come forward with no evidence to establish that a 48-hour rule would cure the intra-class conflict in this case.

At the January 27, 2012, class certification hearing, Plaintiffs' counsel argued,

> Now on the definition of day trader, Your Honor – I mean there is no industry definition. The day trader thing has been around since back in 2000, the whole internet trading buzz. In fact, the day trader was only an issue in this Plan up to 2002 and ceased to be an issue. It has been out there. There is not a standardized definition of it. The only definition we have of it is the defendant's definition since they are the ones who say these were the folks causing the problem and got the benefit from the way we ran this thing.  So the defendants should give us the definition -- what do you mean when you guys say day trader. Doc. 365, Transcript, 42:6-16.

But it is not LMC's burden to define the class or to show that it is sufficiently definite to warrant certification.  "The plaintiff must also show (it is the plaintiff's burden to prove the class should be certified, **Trotter v. Klincar, 748 F.2d 1177, 1184 (7th Cir. 1984))**, that the class is indeed identifiable as a class."  **Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006), citing Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977) (agreeing that class definitions must be definite enough that the class can be ascertained)**.  Under Plaintiffs' proposed definition, persons benefiting from the complained-about liquidity could still be members of the class. Stated another way, serious problems exist in defining and identifying the members of the class such that, as proposed,

the CSF subclass does not satisfy the requirement of an adequately defined and clearly ascertainable class.  *See Simer*, **661 F.2d at 669**.

Moreover, excluding the day traders from the subclass would not alter the effect of a final judgment on their interests.  The CSF are organized at the plan level, and the certification of the proposed subclasses affects the rights of all those who invested in the CSF.  Consequently, under Federal Rule of Civil Procedure 19(a) day traders are "person[s] who … must be joined as a party."  Plaintiffs have identified no class representative for the day traders, and the time for doing so has long since passed.

### CSF subclass, August 2002 – December 2008 ("Subclass 2")

LMC objects to certification of the 2002-2008 subclass on the ground that Plaintiffs have not satisfied their burden to prove that the intra-class conflict was resolved by 2002.  According to LMC, by 2002, the Plans had implemented only the first of a series of changes to the plan design intended to curb frequent trading in the CSF.  LMC notes that Plaintiffs' expert Ross Miller testified that the problems attendant to day trading persisted through the 2004 period.

Under Rule 23(c)(1)(C), "An order [to certify a class] under Rule 23(c)(1) may be altered or amended before final judgment."  A court "remains under a continuing obligation to review whether proceeding as a class action is appropriate, and may modify the class or vacate class certification pursuant to evidentiary developments arising during the course

of litigation." ***Ellis v. Elgin Riverboat Resort***, **217 F.R.D. 415, 419 (N.D.Ill. 2003)(citations omitted).** "Thus, the court's initial certification of a class 'is inherently tentative.'" ***Id.. quoting Coopers & Lybrand,* 437 U.S. at 469 n. 11)**.

Unlike the 48-hour day trader issue or the Hueler Index comparator, the question of whether the class period runs from 2002-2008 or 2004-2008 or some other similar, identifiable period is not central to class certification.  But if the Court ultimately concludes that the day trader class conflict did not resolve until, say 2004, it can easily amend the class definition.

Moreover, for "minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth." ***Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 n.15 (7th Cir. 2012)*, citing Washington v. Walker*, 734 F.2d 1237, 1240 (7th Cir. 1984) (noting that district court conditioned grant of certification on plaintiff's redefinition of class)**.

On the issue of typicality, the Court conditionally finds that Subclass 2 meets the requirements of Rule 23(a)(3).

4.   <u>Adequacy</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In order to satisfy the requirements of Rule 23(a)(4), the class representative must "'possess the same interest and suffer the same injury as the class members.'"  ***Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002),** *quoting **E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)**.  Accordingly, in evaluating adequacy, a court must make sure that there are no inconsistencies between the interests of the named party and the class that he or she represents. ***Uhl*, 309 F.3d at 985, *citing Amchem Prods.*, 521 U.S. at 625)**.

Plaintiffs have identified all of the named Plaintiffs, except Jordan, as class representatives for Subclass 2.  The Court has excluded Menhennett as a class representative, *supra.*  The Court finds no inconsistencies between the interests of the named parties and the class that they represent.  Therefore, the Court concludes that Abbott, Fankhauser, DeMartini, Tombaugh and Ketterer satisfy the adequacy requirement.

5.   <u>Rule 23(b)</u>

Having determined that the requirements of Rule 23(a) are satisfied as to the excessive fees claim, the Court turns to the question of whether a class action can be maintained under one of Rule 23(b)'s three

subsections.   Rule 23(b) authorizes certification of a class action if the prerequisites of subdivision (a) are satisfied, and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests....

**FED. R. CIV. P. 23(b)(1)**.

In this case, the Court finds that the failure to certify Subclass 2 would result in inconsistent or varying adjudications with respect to the individual members of the class, which would establish incompatible standards of conduct for LMC, thereby making this action appropriate for certification under Rule 23(b)(1)(A). In addition, adjudications with respect to individual members of Subclass 2 would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

6.    Rule 23(g)

Having determined that Plaintiffs' CSF claim for Subclass 2 is appropriate for class certification, the Court must also address the adequacy of counsel.  Rule 23(g) is set forth in full above.

LMC contends that permitting the certification of CSF subclasses would create a conflict for class counsel.  LMC asserts that the persons excluded from the Company Stock Fund subclasses as day traders would be members of the excessive fees class.  Thus, class counsel would be required to represent clients on one claim who had adverse interests to the firm's clients on another claim.

The Court does not agree.  Assuming, *arguendo*, that LMC is correct in its assertions as to Subclass 1 where day traders create a conflict, it does not follow that there would be a similar conflict as to Subclass 2 where day trading is not an issue.  Furthermore, each of the proposed classes is discrete and the interests of participants in any given Fund are not adverse to those of the firm's other clients.

For the reasons stated above, the Court finds that the appointment of Schlichter, Bogard & Denton, LLP, as class counsel for CSF Subclass 2 is appropriate.

III.   Conclusion

For all of the above reasons, the Court **GRANTS in part and DENIES in part** Plaintiffs' Amended Motion for Class Certification (Doc.

343): Plaintiffs' motion for class certification of the Excessive Fees Class and the CSF Subclass 2 is **GRANTED**; Plaintiffs' motion for class certification of the SVF Class and the CSF Subclass 1 is **DENIED**.

      A.   For Plaintiffs' Excessive Fees claim, as described above, the Court appoints Plaintiffs Anthony Abbott, Eric Fankhauser, Lloyd DeMartini, Jack Jordan, Dennis Tombaugh and David Ketterer as Class Representatives of the Excessive Fees Class and certifies the following Class pursuant to Rule 23(b)(1)(A) and (B):

> All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan from September 11, 2000 through December 22, 2008, excluding the Defendants, other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

> That class is certified to resolve the following claim:

> Whether administrative fees paid by the Plans and charged to plan participants as a uniform percentage of their assets were excessive, without taking into account any revenue sharing between investment managers and the Plans' recordkeeper.

      B.   For Plaintiffs' Company Stock Funds claims as described above, the Court appoints Plaintiffs Anthony Abbott, Eric Fankhauser, Lloyd DeMartini, Dennis Tombaugh and David Ketterer as Class Representatives of CSF Subclass 2 and certifies the following subclass pursuant to Rule 23(b)(1)(A) and (B):

**Subclass for August 2002 – December 2008**:
All participants and beneficiaries of the Lockheed Martin Corporation Salaried Savings Plan and the Lockheed Martin Corporation Hourly Savings Plan whose accounts held units of the Company Common Stock Fund, Hourly ESOP, or Salaried ESOP, from August 1, 2002 through December 22, 2008, and whose units underperformed relative to Lockheed Martin Common Stock. Excluded from this class are the Defendants and other LMIMCo or Lockheed Martin employees with responsibility for the Plans' investment or administrative functions, and members of the Lockheed Martin Board of Directors.

The Court **APPOINTS** the firm of Schlichter, Bogard & Denton, LLP, as Class Counsel for the Plaintiff Classes pursuant to Rule 23(g).

IT IS SO ORDERED.

DATED this 24th day of September, 2012

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge