UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**ANTHONY ABBOTT, et al.,**

Plaintiffs,

v.

Case No. 3:06-cv-701-MJR-DGW

**LOCKHEED MARTIN CORPORATION, et al.,**

Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPEAL OF MAGISTRATE
JUDGE'S ORDER DENYING THE EXCLUSION OF EXPERT OPINIONS**

Following this Court's guidance, Defendants identified an expert witness to replace the late Ellen Hennessy. The replacement, Dr. Susan Mangiero, is an eminently qualified fiduciary who was given the same assignment as Ms. Hennessy and reached the same conclusions.

Plaintiffs then moved to strike Dr. Mangiero's report. Doc. 427. On their theory, Dr. Mangiero's report was too meticulous—and, they suggest, the detailed explanations of her opinions in her report leave them prejudiced. Judge Wilkerson properly denied Plaintiffs' motion, finding that Dr. Mangiero's report is an appropriate substitute for Ms. Hennessy's. Doc. 444. And to eliminate the prejudice of which Plaintiffs complained, he permitted them to proffer a new rebuttal expert. *Id.* at 8.

Plaintiffs have now appealed Judge Wilkerson's ruling. Doc. 446. They say that Dr. Mangiero has injected new issues into the litigation, but they ignore Ms. Hennessy's deposition testimony on precisely the same topic. And they claim that the opportunity to add to their roster of expert witnesses causes them prejudice, but just the opposite is true. (Indeed, that accommodation *cures* any prejudice, but Plaintiffs need not proffer a new witness if they do not prefer.)

After many years of protracted litigation, this case should be resolved on the merits.  The integrity of the fact-finding process is enhanced when thoughtful and credible expert witnesses, like Dr. Mangiero, offer their opinions.  Judge Wilkerson's order respects that proposition, follows all applicable standards of law, and comports with Plaintiffs' own recent conduct in replacing their deceased expert witness, Dr. Ross Miller.  Plaintiffs cannot show that Judge Wilkerson's order was clearly erroneous.  Accordingly, his order should be affirmed.

## I.      Introduction

During the pendency of the litigation, experts retained many years ago by both sides have died.  Earlier this year, both parties indicated their intent to designate substitute experts for the deceased individuals and identified those new experts.  On August 27, 2014, Plaintiffs informed the Court that Dr. Steve Pomerantz had adopted the opinions of their deceased expert, Dr. Miller.  Plaintiffs sidestepped the requirement that an expert file a report identifying the basis of his opinions, stating that Dr. Pomerantz "agree[d] with Dr. Miller's conclusions" and "adopt[ed] [his] opinions in this case."  Doc. 417-1 at 4.  Defendants objected, but at a hearing on September 2, 2014 the Court allowed this replacement without a new report by Dr. Pomerantz.  At that same hearing, Defendants indicated that Dr. Mangiero would substitute for Ms. Hennessy, adopting her conclusions but submitting a new expert report outlining her own reasons for reaching those same conclusions.  Doc. 416 at 12-13.

Plaintiffs do not dispute that Dr. Mangiero received the same assignment as Ms. Hennessy or that Dr. Mangiero reached the same conclusions as Ms. Hennessy.  In keeping with the purpose of expert testimony, Dr. Mangiero composed a report fully explaining the reasoning she used in reaching her conclusions.  Plaintiffs were provided with Dr. Mangiero's report on September 30, 2014, more than two months before a potential trial date and likely six months

before her trial testimony.  Despite this disclosure, Plaintiffs now make the ironic complaint that they are prejudiced by the fulsomeness of the explanation of Dr. Mangiero's report.

Plaintiffs' motion to strike a substantial portion of Dr. Mangiero's report for supposedly exceeding the scope of Ms. Hennessy's report was heard by Magistrate Judge Wilkerson. Plaintiffs' shifting complaints about Dr. Mangiero's report have now settled on her explanation of her consideration of procedural prudence in determining the appropriateness of various investment decisions, prejudice due to the proximity of trial, and the length of the report itself.

Judge Wilkerson heard all of Plaintiffs' arguments and found none of them persuasive. He found that the Mangiero report did not exceed the scope of the Hennessey report, that it was timely disclosed, and that the interests of fairness and justice weighed in favor of denying the motion to exclude.  Doc. 444 at 8.  Judge Wilkerson also ordered that Plaintiffs be allowed to identify a rebuttal expert to cure any potential prejudice.  *Id.*

## II.    Standard of Review

This Court should not review the non-dispositive pretrial order of a magistrate judge unless plaintiffs have shown such order "is clearly erroneous or is contrary to law."  28 U.S.C. § 636(b)(1)(A).  A magistrate judge's order cannot be found to be clearly erroneous unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Doc. 258 at 2 (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (additional citation omitted) and *Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).

"When performing clear error review, the district court should not overturn a magistrate judge's decision merely because the district judge would have independently come to a different conclusion."  *Smith v. Harrington*, 2014 WL 3537680 at *3 (S.D. Ill. July 17, 2014).  Indeed,

"[u]nder clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have not chosen the other view." *White v. Hinsley*, No. 05-CV-0594-MJR, 2009 WL 559368, at *1 (S.D. Ill. Mar. 5, 2009) (quoting *Westefer v. Snyder*, 472 F.Supp.2d 1034, 1037 (S.D.Ill.2006)).

After full briefing and hearing argument from both sides, Judge Wilkerson properly determined that Dr. Mangiero should be permitted to testify as to the reasoning underlying her conclusions. Because Plaintiffs have not shown that Judge Wilkerson's order was clearly erroneous or contrary to law, the order should not be disturbed. Fed. R. Civ. P. 72(a); *see also* SDIL-LR 73.1(a); and *see Hunter v. Dutton*, 2009 WL 230088, at *1 (S.D. Ill. Jan. 30, 2009).

## III.    Argument

### A.    Judge Wilkerson Appropriately Analyzed the Scope of the Mangiero Report

#### 1.    Judge Wilkerson Properly Found Dr. Mangiero Reached the Same Conclusions as Ms. Hennessy.

Substitute experts are "permitted to conduct [their] own investigation[s] and reach [their] own conclusions, as long as [they] address[] the same subject matter as [the original expert]'s report without meaningful changes." *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010 WL 3892860 at *4 (N.D. Ind. Sept. 30, 2010).

As Defendants explained in their opposition to Plaintiffs' motion to exclude, Dr. Mangiero's report is well within the scope of the Hennessy report. *See* Doc. 436 at 2-6. Most importantly, the two reports reach the exact same conclusions, a critical fact that Plaintiffs do not dispute. *Id.* at 3. Moreover, Dr. Mangiero does not offer opinions on any subject not addressed by Ms. Hennessy in her original report. *See, e.g., Medpace, Inc. v. Biothera, Inc.*, 2014 WL 1045960 at *4 (S.D. Ohio Mar. 17, 2014) (substitute expert's testimony need only be "limited to the subject matter opinions espoused in the first expert's report").

Plaintiffs' complaint here is that the means by which Dr. Mangiero reached the same conclusions as Ms. Hennessy are not identical to the reasoning used by Ms. Hennessy.   As the *Lincoln National* court noted, however, substitute experts who conduct their own investigations will reach their own conclusions in their own way. 2010 WL 3892860 at *4.   That is the very essence of expert testimony – drawing upon individual experience and study to educate the fact-finder.   As no two experts have the same experience or have studied identical materials, a different route is to be expected when one expert substitutes for another.   In fact, if independent thought were not required to reach a given conclusion, there would be no need for expert testimony at all.   *Cf.* Fed. R. Evid. 702 ("[a] witness who is qualified as an expert…may testify in the form of an opinion or otherwise if…the testimony is the product of reliable principles and methods [] and [] the expert has reliably applied the principles and methods to the facts of the case");   Fed. R. Evid. 702 advisory committee note ("[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge"); *Otis v. Doctor's Assoc., Inc.*, 1998 WL 673595 at*3-6 (N.D. Ill. Sept. 14, 1998) (excluding expert opinion where expert undertook no independent analysis to corroborate the reliability or accuracy of the information on which he relied).

Plaintiffs' own approach to substitution of experts is instructive on this fundamental point.   Despite Plaintiffs' representation that Dr. Pomerantz agreed with every word of Dr. Miller's report and testimony, his ensuing deposition proved that he did, in fact, use a different route to reach the same conclusions.   Doc. 439 at 18 (Pomerantz Dep. Tr. at 179) ("I would find it highly unlikely that the two of us could get to the same place through exactly the same path").   It is not even clear that Dr. Pomerantz reached the same conclusions as Dr. Miller – Dr. Pomerantz repeatedly testified that he was merely interpreting Dr. Miller's report and testimony.

*See* Doc. 439 at 29 (citing Pomerantz Dep. Tr. at 94).   Indeed, Dr. Pomerantz openly *disagreed* with Dr. Miller on several issues, including the issues at the very center of Dr. Miller's original report—whether it is necessarily imprudent to hold cash in the Company Stock Fund and the primary source of supposed underperformance.   *See* Doc. 445 at 51-53; Doc. 439 at 22, 26 (citing Pomerantz Dep. Tr. at 54, 118-19).

Defendants objected when Dr. Pomerantz "adopted" Dr. Miller's report because of the unlikelihood that their views were actually identical.   Nevertheless, to determine Dr. Pomerantz's actual views—and the ways in which they differ from Dr. Miller's—Defendants had to await his deposition.  In contrast, Dr. Mangiero's report provided Plaintiffs with advance notice of her reasoning.  Ironically, it appears that Plaintiffs would have no objection if they, like Defendants, had to wait until Dr. Mangiero's deposition to find out what she actually believes. Their primary complaint, then, is the clarity and candor of Dr. Mangiero's report.

> **2.    Judge Wilkerson Properly Concluded That Dr. Mangiero's Report Was Not Outside the Scope of Ms. Hennessy's Report.**

It is well-established that a substitute expert should be "permitted to review all of the evidence, conduct his own independent analysis, and express his opinion in his own words." *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860, at \*4; *see also Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 22 (D.P.R. 2009) (substitute expert should have the opportunity to express his "opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform"). Courts do not require substitute experts to "merely adopt [the former expert's] opinion verbatim." *Lincoln Nat'l Life Ins. Co*., 2010 WL 3892860, at \*4; see also *Morel*, 259 F.R.D. at 22 (not requiring actual adoption of the prior expert's testimony).  Judge Wilkerson's order reflects an understanding of this standard and of his obligations to analyze the scope of both the original and substitute reports:   "the issue

currently before the Court is whether Dr. Mangiero's report exceeds the scope of Ms. Hennessy's report to the point where Dr. Mangiero is articulating new opinions." Doc. 444 at 6-7.

Presented with the same chart of alleged "new testimony" between the two reports that Plaintiffs have reprinted in the present motion, Judge Wilkerson correctly ruled that these differences do not render the Mangiero report beyond the scope of the subject matter covered by the Hennessy report. Doc. 444 at 8. Importantly, none of the points highlighted by Plaintiffs are the conclusions reached by Dr. Mangiero. All of them are clarifications of her reasoning in reaching those conclusions, using materials relevant to this matter that are available to both parties. Judge Wilkerson understood Plaintiffs' request that he undertake a line-by-line analysis of their chart to determine if any of the items constituted new opinions. Doc. 445 at 23.

Plaintiffs now complain, though, that Judge Wilkerson did not undertake such an analysis. Doc. 446 at 9. But the transcript belies Plaintiffs' arguments and indicates that Judge Wilkerson did, in fact, analyze the differences between the reports in great detail. *See, e.g.,* Doc. 445 at 14-23. During the course of that analysis, Judge Wilkerson examined the content of the Hennessy report and noted that it included the elements underlying procedural prudence. *See id.* at 14-18. He identified multiple references to Ms. Hennessy's reliance on procedural prudence at her deposition. *See id.* And he understood that the issue before him was whether the existence of procedural prudence, among other items, was a new opinion raised in Dr. Mangiero's report. Noting the "vast discretion" afforded to judges in supervising discovery, Judge Wilkerson concluded that Dr. Mangiero's report did not contain new opinions, including as to procedural prudence. *See id.* at 7-8.

Plaintiffs argue that the lack of a line-by-line refutation of their claims indicates that Judge Wilkerson did not apply the appropriate standard in analyzing their claims. They cite no

support for the notion that such an analysis is required.  In fact, each of their claims fails for the same reason – as Judge Wilkerson found, each of the disputed passages in Dr. Mangiero's report is within the scope of Ms. Hennessy's report.  Plaintiffs have no right to require a court to repeat that incantation 15 times.  *See Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1156 (7th Cir. 1998) ("As trier of fact, the magistrate judge did not need to discuss in detail all of the subsidiary issues that informed his resolution of the ultimate issue.").

Judge Wilkerson also correctly noted that the Seventh Circuit has not provided direct guidance on the manner in which substitute experts may craft their reports.  For that reason, he crafted a remedy appropriate to the interests of fairness and justice.  Doc. 444 at 7-8.  Plaintiffs attempt to attack Judge Wilkerson's conclusions by citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2012).  However, *Dura* provides no relevant bearing on the present case.  In *Dura*, a party attempted to add *additional, multiple* experts to testify on a topic after their original expert, *still available*, had been determined to be *unqualified* to testify on the subject.  *See id*. at 612.  The offering party argued that it could not have foreseen that the judge would find its expert unqualified and should thus be forgiven the late additions.  *See id*. at 615.  The court disagreed, noting that there was no justification because the party should have known about its expert's lack of qualifications, because allowing the additional experts would extend the litigation, and because the delay in disclosure may have been strategic.  *See id*.  *None* of those factors is present in this case.  Neither the qualifications of Ms. Hennessy nor Dr. Mangiero are suspect.  Defendants could not possibly have foreseen the death of Ms. Hennessy.  The inclusion of Dr. Mangiero's testimony, likely not to be heard until next spring, will certainly not delay this litigation.  Finally, while this is not the first time that Plaintiffs have implied that Defendants are attempting to use the death of Ms. Hennessy for strategic advantage, that claim remains as

inappropriate today as it was at the October 8 hearing. That *Dura* prevented a party from replacing their available yet unqualified expert with *multiple* new experts in a potentially strategic effort to disadvantage its opponent has no bearing on Defendants' ability to substitute an expert for one who is unavailable only due to her untimely death.

Dr. Mangiero's report offers the *same* opinions on the *same* four subjects considered in the Hennessy report. It in no way "change[s] the core of the opinions expressed." *Allstate Ins. Co. v. Maytag Corp.*, 1999 WL 203349 at *5 (N.D. Ill. Mar. 30, 1999). Judge Wilkerson's ruling was correct, and Plaintiffs cannot prove that his findings in this regard are clearly erroneous. Fed R. Civ. P. 72(a); SDIL-LR 73.1(a).

### B.   Plaintiffs Will Not Suffer Prejudice From the Mangiero Report

Plaintiffs' argument that they will be prejudiced by Dr. Mangiero's report is equally unavailing. As this Court has noted, it is unlikely that Dr. Mangiero will testify until next March. Plaintiffs are armed with a detailed report setting forth her opinions and conclusions, and have set her deposition for Nov. 25, before commencement of trial. They have more than ample time to examine her report and opinions before trial begins and a full opportunity to depose her, to cross-examine her at trial, and even to call an additional rebuttal expert if necessary.

The factors that courts consider in evaluating prejudice include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The third and fourth factors are dispensed with easily here: there is no risk that introducing Dr. Mangiero's testimony will disrupt or delay the trial, and there is no argument that this substitution was made in bad faith.

The only remaining arguments are potential prejudice and, if that exists, the ability to cure that prejudice.  Given that Plaintiffs were provided with a copy of the Mangiero report on September 30, 2014, more than two months prior to the earliest potential trial date and likely 6 months before her testimony, they will have had ample time to examine her report and opinions before she testifies at trial.  *See* Doc. 445 at 45-46.  This more than satisfies their entitlement to a report and deposition with sufficient time before trial begins. *See, e.g.*, *Roberts v. Galen of Va., Inc.*, 325 F.3d at 783 (where opposing counsel had adequate time to consider the substance of the expert report, no prejudice resulted); *Braun Corp. v. Vantage Mobility Int'l, LLC*, 2010 WL 2039596, at *5 (N.D. Ind. May 20, 2010) (permitting a party to depose the expert after a supplemental report has been filed can cure any prejudice); *In re Cessna 208 Series Aircraft Prods. Liab. Litig*., 2008 WL 4937651, at *3 (D. Kan. Nov. 17, 2008) (no prejudice where trial date will not be affected and opposing party will have the opportunity to adequately depose the expert); *Morel*, 259 F.R.D. at 20 (significant factor in determining whether the opposing party will be prejudiced is how long before trial the disclosure is made).  In any event, Judge Wilkerson's order cures any potential prejudice by authorizing Plaintiffs to designate a rebuttal expert.  *See* Doc. 444 at 8.

Further, the very details that Plaintiffs argue impermissibly broaden the scope of Dr. Mangiero's report actually provide additional protections against any potential prejudice.  *Cf. Allstate Ins. Co.*, 1999 WL 203349, at *6 (no prejudice where, even though opposing party not given an additional opportunity for a deposition, the supplemental report was detailed enough to draw conclusions).  The detailed disclosures of Dr. Mangiero's opinions place Plaintiffs in a *better* position than Defendants, who were not given a report outlining Dr. Pomerantz's reasoning and were surprised at his deposition and perhaps may be again at trial.  If any of Dr.

Mangiero's opinions remain unclear after this detailed report, Plaintiffs can gain clarity at her deposition, and address remaining uncertainty their rebuttal expert.   Such disclosures and opportunities to examine and counter the claims of Dr. Mangiero render Plaintiffs' argument of prejudice hollow.

Finally, there is no attempt to inject any new issues into this case through Dr. Mangiero's report.  Plaintiffs' main concern appears to be the report passages that address the concept of procedural prudence.  Plaintiffs cannot claim any surprise to Dr. Mangiero's discussion of this issue.  The issue was raised in Ms. Hennessy's report and explicitly discussed at her deposition.  Doc. 445 at 15-18.  It was always going to be an issue at trial.  In fact, Defendants briefed this issue when they asked this Court for leave to move for summary judgment on the claims of the new class representative.  *See* Docs 394, 396.  Although the Court declined to consider the motion at that time, there is no question that the issues in those briefs remain live for trial.  Further, the deposition testimony of Plaintiffs' own substitute shows that procedural prudence has been an issue in the case from its inception.  Defendants discovered at the deposition of Dr. Pomerantz that a fundamental basis for his conclusion that there were damages in the Company Stock Fund is an alleged lack of evidence that the Defendants considered other options (*i.e.*, that Defendants failed to exercise procedural prudence).  *See* Doc. 439 at 30 (citing Pomerantz Dep. Tr. at 224).  Procedural prudence will be an issue for the Court to resolve at trial, and any claim that Dr. Mangiero's report introduces new issues into this case is without merit.

### C.   The Length of the Mangiero Report is Irrelevant

Plaintiffs repeatedly attempt to make an issue of the length of Dr. Mangiero's report.  The irony, of course, is that the detailed nature of the report actually *benefits* Plaintiffs precisely as an expert report should – by providing them ahead of time with a thorough understanding of the

bases for the conclusions Dr. Mangiero shares with Ms. Hennessy.   Judge Wilkerson appropriately noted that the length of the report was not relevant to Plaintiffs' motion to exclude. *See* Doc. 445 at 12.

Plaintiffs have once again raised the issue, pressing the argument that some of Dr. Mangiero's conclusions are fundamentally different from Ms. Hennessy's because Dr. Mangiero used more words to describe them.   Essentially, their complaint is that Dr. Mangiero's report contains too much detail.   For obvious reasons, Plaintiffs can point to no authority indicating that the number of words used in a substitute expert report has any bearing on the question of whether to exclude that report.   The question presented to Judge Wilkerson and to this Court has nothing to do with word counting.   Because Judge Wilkerson analyzed the issue correctly and fashioned a procedure that avoids any potential prejudice to Plaintiffs, his order should not be overturned on this or any other issue.

### IV.   Conclusion

Judge Wilkerson correctly ruled that Plaintiffs' objections to Dr. Mangiero's report are without merit because her report is well within the scope of Ms. Hennessy's report.   Dr. Mangiero's report does not offer any new opinions, introduce new conclusions, or address any new subjects not addressed by Ms. Hennessy.   The report is well within the bounds of the rules for substitute experts.   As such, the Court should affirm Judge Wilkerson's November 7, 2014 order denying Plaintiffs' Motion to Exclude.

Dated: November 17, 2014

Respectfully submitted,

/s/ James E. Crowe, III
James G. Martin #6187143
James E. Crowe, III
DOWD BENNETT LLP
7733 Forsyth Boulevard, Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
jmartin@dowdbennett.com
jcrowe@dowdbennett.com

Brian D. Netter
Michelle N. Webster
E. Brantley Webb
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
(202) 263-3000 (telephone)
(202) 263-3300 (facsimile)
bnetter@mayerbrown.com
mwebster@mayerbrown.com
bwebb@mayerbrown.com

Peter H. White
SCHULTE ROTH & ZABEL LLP
1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
(202) 729-7476 (telephone)
(202) 730-4520 (facsimile)
peter.white@srz.com

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**ANTHONY ABBOTT, et al.,**

Plaintiffs,

v.

**LOCKHEED MARTIN CORPORATION, et al.,**

Defendants.

Case No. 3:06-cv-701-MJR-DGW

CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants Lockheed Martin Corporation and Lockheed Martin Investment Management Company, hereby certifies that on the 17th day of November 2014, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to the following:

> Jerome J. Schlichter
> Nelson Wolff
> Michael Wolff
> Troy A. Doles
> Heather Lea
> Jason P. Kelly
> Sean Soyars
> Mark G. Boyko
> Andrew D. Schlichter
> SCHLICHTER, BOGARD & DENTON
> 100 S. 4th Street, Suite 900
> St. Louis, MO 63102
> *Attorneys for Plaintiffs*

> By:     /s/  James E. Crowe, III
> James E. Crowe, III
> DOWD BENNETT LLP
> 7733 Forsyth Boulevard, Suite 1900
> St. Louis, Missouri 63105
> (314) 889-7300 (telephone)
> (314) 863-2111 (facsimile)
> jcrowe@dowdbennett.com

- 14 -