UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

ANTHONY ABBOTT *et al.*,
        *Plaintiffs*,

vs.              No. 06-cv-701-MJR-DGW

LOCKHEED MARTIN CORP. *et al.*,
        *Defendants*.

## ORDER REGARDING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**Reagan, Chief Judge:**

  This matter is before the Court in connection with Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses and for Case Contribution Awards for Named Plaintiffs. (Doc. 501). In their Motion, Class Counsel, the law firm of Schlichter, Bogard & Denton, requests a court approved fee for its role in obtaining a settlement of class claims under the Employee Retirement Income Security Act ("ERISA"). The settlement provides a $62 million monetary recovery for the benefit of as many as 181,000 current and former participants in two 401(k) plans offered to employees of Lockheed Martin, as well as powerful affirmative relief designed to reduce fees and improve investment offerings.

  Class Counsel has asked this Court to approve a fee award of one-third of the monetary settlement obtained, or $20,666,666. Class Counsel has also asked this Court to award it $1,644,929.82 for outstanding expenses. Additionally, Class Counsel has requested this Court approve $25,000 incentive awards to each of the six Class Representatives and $10,000 to Named Plaintiff Roger Menhennett.

  Pursuant to the Settlement Agreement and the Court's Order, Class Counsel directed the mailing of individual notices to the Class and created a Class website to provide information to the Class. It is noteworthy that individual notices were mailed to over 181,000 potential Class

1

Members, yet only five objected to Class Counsel's request for fees and costs. This Court finds the lack of any meaningful number of objections to be an unmistakable sign of the Class's overwhelming support for Class Counsel's Application.

This Court has witnessed many examples over the past eight and a half years of Class Counsel's zealous representation of the Class. The Court admires Class Counsel's exceptional commitment and perseverance in representing employees and retirees seeking to improve their retirement plans. Mr. Schlichter and the firm of Schlichter, Bogard & Denton have demonstrated its well-earned reputation as a pioneer and the leader in the field of retirement plan litigation. Class Counsel's Motion (**Doc. 501**) is **GRANTED.** This Order explains this Court's conclusion that Class Counsel's fee and cost request is reasonable and merited.

## I. FINDINGS AND CONCLUSIONS

### A. Class Counsel's Request for Attorneys' Fees

Under the "common-fund" doctrine, a class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class. See, e.g. *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). Additionally, the United States Court of Appeals for the Seventh Circuit has found that attorneys' fees based on the common fund doctrine are appropriate in ERISA cases. See, *Florin v. Nationsbank*, 34 F.3d 560, 563 (7th Cir. 1994). A court must also consider the substantial affirmative relief when evaluating the overall benefit to the class. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S.Dist.LEXIS 12037 at 5 (S.D.Ill. Jan 31, 2014)(J. Herndon); citing Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004); Principles of the Law of Aggregate Litigation, § 3.13 and *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)(cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief"). This is important so as to encourage attorneys to obtain effective affirmative relief. It is noteworthy that

Class Counsel did not agree to a settlement after agreement was reached on the monetary terms. Instead, Class Counsel sought substantial non-monetary relief as a condition of settlement. Class Counsel's insistence on widespread affirmative relief, in addition to the monetary relief, added tremendous material value to the Lockheed Martin 401(k) plans. It will benefit the classes, as well as future Plan participants, year after year into the future.

In determining whether to grant a fee application in a class action settlement, the Seventh Circuit Court of Appeals requires the Court to determine whether a requested fee is within the range of fees that would have been agreed to at the outset of the litigation in an arms-length negotiation given the risk of nonpayment and the normal rate of compensation in the market at the time. See, *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). "It is not the function of the judge in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by the court." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This requires the district judge to "ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).

When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998); *Florin*, 34 F.3d at 566. A one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law. *Beesley v. Int'l Paper Co.*, 2014 U.S.Dist.LEXIS 12037 at 10; *Will v. General Dynamics Corp.*, No. 06-698, 2010

U.S.Dist.LEXIS 123349 at 9 (S.D.Ill. Nov. 22, 2010)(finding that in ERISA 401(k) fee litigation, "a one-third fee is consistent with the market rate")(J. Murphy). Further, the Court agrees with Special Master Goldenberg: "while one-third is reasonable, the fee can also be calculated as 20.4% of the settlement when the non-monetary relief is considered." Doc. 497 at 12. This Court agrees with prior courts in finding that the market for Class Counsel's work in ERISA fiduciary breach cases is a contingent fee market and not an hourly market. Comprising 33 1/3 % of the monetary recovery, and only 20.4% of the settlement's value when non-monetary relief is considered, as it must be, Class Counsel's fee application is certainly reasonable. At 20.4% of the value of the settlement, the requested fee is actually far less than the market rate in national ERISA litigation such as that practiced by Schlichter, Bogard & Denton.

The Court also agrees with Mary Ellen Signorille, ERISA senior staff attorney with the AARP Foundation in Washington, D.C., who described the settlement as "*an exceptional recovery*" for the class that "was only made possible by Schlichter, Bogard & Denton risking tremendous sums of time and money while providing an exceptional level of professional services throughout eight years of litigation." Doc. 498-1 at 7. In this way, Schlichter, Bogard & Denton's work embodies the finest attributes of a private attorney general, risking significant resources for the good of those saving for their retirement.

Class Counsel's fee request is more than justified in this case given the extraordinary risk counsel accepted in agreeing to represent the Class; the fact that Class Counsel brought this kind of case when no one else had; Class Counsel's demonstrated willingness to pursue this action over more than eight and a half years of intense, adversarial litigation; the monetary recovery, which is the largest of any such case (Doc. 497 at 47); and the enormous value of the plan improvements and future relief included in this settlement.

Schlichter, Bogard & Denton demonstrated extraordinary skill and determination in obtaining this result for the Class. Class Counsel performed substantial work for over a year before filing suit, including investing hundreds of hours of attorney time, investigating, speaking with Plan Participants, obtaining documents from public sources and the Plan administrator, reviewing and analyzing Plan documents and financial statements, developing expertise regarding industry practices, conducting extensive legal research and fashioning the Class's causes of action at a time when such cases did not exist. This careful evaluation of claims, a hallmark of Schlichter, Bogard & Denton, added tremendous value to the Class throughout the litigation.

Since filing this case on September 11, 2006, Class Counsel has been committed to the interests of the participants and beneficiaries of the Lockheed Martin 401(k) plans in pursuing this case and several other 401(k) fee cases of first impression. The law firm Schlichter, Bogard & Denton has had a "humongous" impact over the entire 401(k) industry, which has benefited employees and retirees throughout the country by bringing sweeping changes to fiduciary practices. Linda Stern, *Stern Advice—How 401(k) Lawsuits Are Bolstering Your Retirement Plan*, REUTERS, Nov. 5, 2013 (quoting Mike Alfred, co-founder and CEO of Brightscope, an independent firm that provides data about retirement plans); see also *Nolte v. Cigna, Corp.*, Case 07-2046, Doc. 413 at 3–4 (C.D.Ill. Oct. 15, 2013)(in which Judge Baker stated that nationwide, "fee reductions attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's disclosure regulations approach $2.8 billion in annual savings for American workers and retirees."); Gretchen Morgenson, *A Lone Ranger of the 401(k)'s*, THE NEW YORK TIMES (March 29, 2014) (Schlichter's cases have been "good news for all 401(k) holders").

The use of a lodestar cross-check is no longer recommended in the Seventh Circuit. See *In re Synthroid Marketing Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2003)("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."); *Beesley*, 2014 U.S.Dist.LEXIS 12037 at 10 ("The use of a lodestar cross-check has fallen into disfavor."); *Will*, 2010 U.S.Dist.LEXIS 123349 at 10 ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). Nevertheless, this Court finds that Class Counsel spent 20,124 attorney hours and 4,960 hours of non-attorney professional time litigating this case.[1] By handling the matter without separately-appointed local counsel, Class Counsel was able to provide additional value to the Class without added expense. Class Counsel will also spend substantial time over the next three years because Class Counsel is committed to monitor compliance by Defendants with the terms of the settlement agreement and has committed to bring an enforcement action if needed without cost to the Class.

Additionally, few lawyers or law firms are capable of handling this type of national litigation. But for Class Counsel's determined prosecution of this action, the Lockheed Martin 401(k) plans and their participants would not have obtained any recovery because it is extremely unlikely that they would have found other qualified counsel to assume the burden and risk of pursuing these claims. If the participants had been able to find counsel who was willing to take on this case, the market for legal services in cases such as this is a national one. *Beesley*, 2014 U.S.Dist.LEXIS 12037 at 11. Class Counsel's proposed rates are reasonable and consistent with market rates at that time and could be enhanced to today's rates.

---

[1] The Court may rely on summaries submitted by attorneys and need not review actual billing records. *Will,* 2010 U.S. Dist. LEXIS 123349, at *11 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005)).

This Court finds that the reasonable hourly rate for Class Counsel's services are as follows: for attorneys with at least 25 years of experience, $974 per hour; for attorneys with 15–24 years of experience, $826 per hour; for attorneys with 5–14 years of experience, $595 per hour; for attorneys with 2–4 years of experience, $447 per hour; for Paralegals and Law Clerks, $300 per hour; for Legal Assistants, $186 per hour. Given these rates, the lodestar value for Class Counsel's services with no enhancement for risk would be $15,541,544. Class Counsel's fee request for $20,666,666 represents a risk multiplier of less than 1.33. Between 1993 and 2008, the mean multiplier in class actions in the Seventh Circuit was 1.85. Theodore Eisenberg & Geoffrey Miller, Attorneys' Fees and Expenses in class Action Settlement: 1993–2008, 7 J. Empirical Legal Stud. 248, 272 (Table 14) (2010). In developing, risky litigation such as this, the Court would anticipate a risk multiplier exceeding the mean. That Class Counsel's request represents only a fraction of the mean reflects a substantial bargain for the Class.

This Court further finds that the expenses for which Class Counsel's seek reimbursement were reasonable and necessary. It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation. Fed.R.Civ.P. 23; *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when, as here, the fee is contingent. Additionally, Class Counsel incurred these expenses over the course of over nine years. Further, the fact that Class Counsel does not seek interest as compensation for the time value of money or costs associated with advancing these expenses to the Class makes this fee request all the more reasonable.

Finally, Plaintiffs request $25,000 incentive awards to each of the six Class Representatives and $10,000 for Named Plaintiff Roger Menhennett. "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litig.*, 264 F.3d at 722–23. The record suggests that the Named Plaintiffs initiated the action, took on a substantial risk, and remained in contact with Class Counsel. Additionally, as noted by the Special Master, "the named Plaintiffs have been active, hands-on participants in the litigation, expending significant amounts of their own time to the benefit of the Class." Doc. 497 at 56. "Further, unlike in consumer and most other class actions, each Plaintiff was willing to alienate their employer, longtime friends loyal to Lockheed and current and future employers unlikely to embrace an employee who files an action against his employer." *Id*. at 47.

Awards of $10,000 to $25,000 for a Named Plaintiff award and total Named Plaintiff awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable cases. Doc. 497 at 59. Accordingly, the Court adopts the recommendations of the Special Master and awards $25,000 to each of the six Class Representatives and $10,000 to Named Plaintiff Menhennett.

## II.  CONCLUSION

After consideration of Class Counsel's Motion, and consistent with the findings of the Special Master—whom the Court again commends for remarkably thorough and dedicated service—this Court concludes that the requested attorneys' fees and cost reimbursements are fair, reasonable and merited by the Counsel's enormous efforts resulting in relief for the class.

Accordingly, Class Counsel's motion (**Doc. 501**) is **GRANTED.** It is **ORDERED** that the requested attorneys' fees of $20,666,666 are **APPROVED**. It is **FURTHER ORDERED** that the requested reimbursement of $1,644,929.82 in outstanding costs is **APPROVED**. The Settlement Administrator shall pay the combined sum of $22,311,595.82 to the firm of

Schlichter, Bogard & Denton out of the Settlement Fund; and shall separately pay Plaintiffs Abbott, Fankhauser, DeMartini, Jordan, Tombaugh and Ketterer $25,000 each; and shall pay Plaintiff Menhennett $10,000.

IT IS SO ORDERED.

DATE: July 17, 2015

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
Chief Judge
U.S. District Court